795 F.2d 582
 58 A.F.T.R.2d 86-5444, 86-2 USTC P 9555
 ESTATE OF Vincent DeNIRO, Deceased, Helen M. Papalia and
Joanne F. DeNicholas, Administratrices, Louis R. DeNiro,
Transferee, Frank DeNiro, Transferee, and Michael DeNiro,
Transferee, Plaintiffs-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.
 No. 85-1483.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 4, 1986.
Decided July 18, 1986.
 
 James C. Herndon, William T. Walker, Buckingham, Doolittle & Burroughs, Akron, Ohio, Robert W. Malone argued, for plaintiffs-appellants.
 Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Washington, D.C., Michael L. Paup (Lead Counsel), Glenn L. Archer, Jr., Tax Div., Dept. of Justice, Washington, D.C., Jonathan S. Cohen, Elaine F. Ferris argued, for defendant-appellee.
 Before KRUPANSKY, GUY and BOGGS, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 This is an appeal from a Tax Court decision upholding a federal income tax assessment by the Commissioner of Internal Revenue against the Estate of Vincent DeNiro. For the reasons set forth below, we reverse and remand.
 
 I.
 
 2
 In 1969, the Estate of Vincent DeNiro received from National Cigarette Sales (NCS), a corporation formerly controlled by Mr. DeNiro, $89,257 with which to pay estate taxes. The Commissioner assessed the Estate for taxes due on the income represented by the payment, and the Estate contested the assessment before the Tax Court.
 
 
 3
 The issue before the Tax Court was whether the payment should be characterized as a dividend. If NCS had sufficient "accumulated earnings and profits" to make the payment, the payment is a dividend, fully taxable as ordinary income to the Estate.[1] To the extent that NCS did not have such accumulated earnings and profits, the payment is either taxable to the Estate at capital gains rates or not taxable at all. See 26 U.S.C. Sec. 301.
 
 
 4
 The Tax Court ruled that the Estate had not carried its burden of proving the amount of NCS's accumulated earnings and profits, and thus upheld the Commissioner's assessment, which treated the full $89,257 as ordinary income. The Estate now appeals from that ruling, arguing that the Tax Court erroneously discounted the uncontradicted testimony of NCS's accountant, John Rogan, who testified that NCS had no accumulated earnings and profits.
 
 
 5
 At trial, Rogan introduced into evidence NCS's original and amended 1969 tax returns, which included adjustments made as a result of IRS audits covering the years 1962 through 1967. These returns indicated that NCS had shown a net profit of $64,431 during the years 1966, 1967, and 1968. Based on these records and on his examination of the company's accounts, Rogan testified that, as of January 1, 1969, NCS (which was founded in 1955) had an accumulated earnings and profit deficit of $96,335.90. Rogan used the retained earnings figure from NCS's amended 1969 tax return to calculate NCS's accumulated earnings. The 1969 return was filed with the IRS and was not challenged. The Estate presented no additional evidence and did not examine Rogan concerning the year-by-year status of the accumulated earnings and profits accounts for any time prior to the year 1968. The Commissioner did not cross-examine or otherwise challenge Rogan. The Tax Court held that the Estate had failed to carry its burden, and upheld the Commissioner's assessment.
 
 II.
 
 6
 As a general principle, the burden is on the taxpayer to prove the incorrectness of the Commissioner's determinations. Estate of DeNiro v. Commissioner, 746 F.2d 327, 333 (6th Cir.1984). However, if the taxpayer has presented "relevant credible evidence," the Commissioner then has the burden of going forward with rebuttal evidence. Demkowicz v. Commissioner, 551 F.2d 929, 931 (3rd Cir.1977). If the taxpayer's testimony is unimpeached, competent, and relevant it "may not be arbitrarily discredited and disregarded" by the Tax Court. Loesch & Green Construction Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir.1954). On the other hand, the Tax Court is not required to accept uncontroverted testimony at face value when it is "improbable, unreasonable or questionable." Estate of DeNiro v. Commissioner, 746 F.2d 327, 331 (6th Cir.1984) (quoting Commissioner v. Smith, 285 F.2d 91, 96 (5th Cir.1960)).
 
 
 7
 In determining that the Estate had failed to carry its burden, the Tax Court rejected Rogan's testimony as "highly questionable." First, the Court found Rogan's testimony regarding NCS's accumulated losses of more than $160,000 in 1955-65 to be "highly questionable" in light of NCS's reported profits of $64,431 in 1966-68. In the absence of any impeaching or contradictory testimony, however, we find nothing inherently "improbable, unreasonable, or questionable" in a corporation suffering losses during the initial years of its existence and earning profits later.
 
 
 8
 Second, the Tax Court found that Rogan's failure to testify as to any adjustments made to the accounting concept of retained earnings and profits made his testimony "highly questionable" regarding the tax concept of accumulated earnings and profits. Circumstances often require such adjustments, which can either raise or lower a corporation's earnings and profits account, but not so often that one may presume that they are required by all corporations in all situations. Absent some evidence that adjustments were required here, Rogan's failure to testify whether the adjustments were made does not make his testimony "improbable, unreasonable, or questionable."
 
 
 9
 In sum, we find that Rogan's unrebutted testimony is not, itself, "improbable, unreasonable, or questionable."[2] While there might well be reasons to question Rogan's testimony, the Commissioner chose not to present such reasons either by cross-examining Rogan or by offering rebuttal evidence.[3] It would be inherently unfair to permit the Tax Court to discredit a taxpayer's unrebutted testimony that is not "improbable, unreasonable, or questionable," particularly when the testimony is that of a credible, unimpeached witness and is based on previous tax filings that are not now in controversy. We hold that in such circumstances the Commissioner may not prevail without at least impeaching the witness or presenting some rebuttal evidence.
 
 III.
 
 10
 This case has been before this Court before. DeNiro v. Commissioner, 746 F.2d 327 (6th Cir.1984). At that time, we remanded to the Tax Court with general instructions, and the Tax Court chose not to hear additional evidence. We now remand with specific instructions: The Court (1) shall consider Rogan's testimony as adequate to meet the Estate's initial burden on the issue of whether NCS's payment should be characterized as a dividend and (2) shall permit the Commissioner to cross-examine Rogan, to present impeachment evidence, and to present rebuttal evidence with respect to NCS's accumulated earnings and profits.
 
 
 11
 As indicated in our earlier remand, the Tax Court may also consider the Commissioner's argument that the entire amount paid by NCS is taxable as a discharge of obligations. 26 U.S.C. Sec. 61(a)(12).
 
 
 12
 REVERSED and REMANDED.
 
 
 
 [1]
 Section 316(a) of the Internal Revenue Code (26 U.S.C. Sec. 1, et seq.) defines a "dividend" as any corporate property distribution made "out of its earnings and profits accumulated after February 28, 1913" or "out of its earnings and profits of the taxable year...." All parties agree that, in 1969, NCS had current earnings and profits of $41,762.99 and that this amount is taxable as income to the estate
 
 
 [2]
 We note that the Tax Court here gave no indication that it disbelieved Rogan personally, in contrast to the authorities cited by the Commissioner, Lovell and Hart, Inc. v. Commissioner, 456 F.2d 145, 147-48 (6th Cir.1972) and Commissioner v. Smith, 285 F.2d 91, 97 (5th Cir.1960)
 
 
 [3]
 In fact, at one point in the hearing, the Commissioner fought against the introduction of any evidence on NCS's earnings and profits, arguing that such evidence would be irrelevant because "we do not contend [the payments] are dividends." Jt.App. at 136, 138, 140, 141, 143