IDAHO FIRST NATIONAL BANK AND ITS SUBSIDIARY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MOORE FINANCIAL GROUP, INC. AND ITS SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Idaho First Nat'l Bank v. Commissioner
Docket Nos. 27381-88, 27382-88
United States Tax Court
T.C. Memo 1990-499; 1990 Tax Ct. Memo LEXIS 552; 60 T.C.M. (CCH) 810; T.C.M. (RIA) 90499; September 20, 1990, Filed *552 Decisions will be entered under Rule 155. Robert J. Jones, L. Hope O'Keeffe, and Steven P. Lockman, for the petitioners. Wilton A. Baker, for the respondent. COHEN, Judge. COHEN
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION In our opinion filed August 23, 1990, as 95 T.C. , we discussed and decided the primary issue remaining in this case. The parties had been ordered to file supplemental memoranda with respect to two additional issues, to wit, petitioners' claimed loss on *554 worthlessness of certain assets and deduction for additional pension contributions in 1985. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue. FINDINGS OF FACT Background facts are set forth in our prior opinion, 95 T.C. (filed August 23, 1990), and are incorporated herein by this reference. In November 1985, as a precondition to approval of the merger of Continental Bank and Trust Company (Continental) and Moore Financial of Utah (Utah), the Federal Reserve Board required Utah to transfer to Moore Financial Group, Inc. (Moore or petitioner) or otherwise dispose of assets subject to adverse classification by the Utah Department of Financial Institutions or Federal Reserve Bank examiners. Certain assets were transferred by Utah to Moore or otherwise were disposed of in 1985. No deductions relating to these transfers were claimed on Moore's 1985 tax return. On its consolidated income tax return for 1986, Moore carried forward and deducted losses of $ 5,808,946 related to 1985 transfers of assets. In a letter dated November 14, 1985, from the Federal Reserve Bank of San Francisco to Moore, reference *555 was made to "low quality" assets, and Moore was requested to remove such assets from Utah prior to merging it with Continental. A letter dated November 27, 1985, from the Board of Governors of the Federal Reserve System to petitioner set forth, as one of the conditions for approval of the merger, that: 1) Moore Financial/Utah commits by year-end 1985 to transfer to MFGI [Moore], or otherwise dispose of, any of its assets subject to adverse classification or special mention by the Utah Department of Financial Institutions (the "Department") in its most recent examination report, unless the Department determines by year-end that such assets are no longer subject to adverse classification or special mention. During 1985, Moore made total cash contributions of $ 1,450,623 to the Moore employee retirement plan. On its consolidated income tax return for 1985, Moore claimed a deduction for "retirement" expenses of $ 973,000. OPINION Petitioner bears the burden of proof with respect to the issues in these cases. Rule 142(a), Tax Court Rules of Practice and Procedure. In support *556 of its claimed additional deductions, Moore presented the testimony of a corporate officer, who referred to various tax return entries; copies of certain tax return schedules; work papers prepared in 1987; and extracts from petitioner's books and records. Petitioner asks that we accept these materials at face value because they are not contradicted by respondent. Petitioner did not present any other evidence of the worthlessness of the assets to which the claimed losses related or the correct amount of the deduction for pension contributions during 1985. Respondent argues that petitioner has not proven that it satisfies the requirements of section 166 with respect to the claimed worthless assets or the requirements of section 404(a) with respect to the pension deduction. We agree with respondent. We are not required to accept petitioner's entries on its books and records as proof of the correctness of its tax returns. See, e.g., Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. To do so would, in effect, shift the burden *557 of proof to respondent. The issues in this case are unlike those in Estate of DeNiro v. Commissioner, 795 F.2d 582, 585 (6th Cir. 1986), revg. and remanding a Memorandum Opinion of this Court. In that case, a certified public accountant testified as to accumulated earnings and profits of a corporation, based on the books and records. The Court of Appeals ruled that: "It would be inherently unfair to permit the Tax Court to discredit a taxpayer's unrebutted testimony that is not 'improbable, unreasonable, or questionable,' particularly when the testimony is that of a credible, unimpeached witness and is based on previous tax filings that are not now in controversy." (After further trial, we concluded that the witness had incorrectly calculated the accumulated earnings and profit balance because "[he] presumed the retained earnings account was representative of the accumulated E & P account, and treated it accordingly." Estate of DeNiro v. Commissioner, T.C. Memo. 1990-398, slip op. at p. 19.) We need not decide whether we will follow the opinion of the Court of Appeals in Estate of DeNiro in this case, appealable to a different circuit, *558 because it is not directly in point. See Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Earnings and profits are necessarily an accounting or tax concept based on historic reporting. Allowance of the deductions that petitioner claims in this case does not depend on historical filings not now in controversy but on satisfaction of specific requirements of the statutes under which the deductions are claimed. Section 166(a)
Section 166(a) allows a deduction for "any debt which becomes worthless within the taxable year." In support of its position, petitioner cites section 1.166-2(d)(1), Income Tax Regs., which provides that worthlessness is presumed in the year of charge-off: If a bank or other corporation which is subject to supervision by Federal authorities, or by State authorities maintaining substantially equivalent standards, charges off a debt in whole or in part, either -- (i) in obedience to the specific orders of such authorities, or (ii) in accordance with established *559 policies of such authorities, and, upon their first audit of the bank or other corporation subsequent to the charge-off, such authorities confirm in writing that the charge-off would have been subject to such specific orders if the audit had been made on the date of the charge-off, then the debt shall, to the extent charged off during the taxable year, be conclusively presumed to have become worthless, or worthless only in part, as the case may be, during such taxable year. But no such debt shall be so conclusively presumed to be worthless, or worthless only in part, as the case may be, if the amount so charged off is not claimed as a deduction by the taxpayer at the time of filing the return for the taxable year in which the charge-off takes place. Respondent contends that petitioner has not met the requirements of section 1.166-2(d)(1), Income Tax Regs., because petitioner has not proven that any asset was "subject to adverse classification" by either the Utah Department of Financial Institutions or the Federal Reserve Bank examiners and because the deduction was not claimed by petitioner at the time it filed its 1985 return. Petitioner *560 relies on the two letters received in November 1985 as evidence that unidentified assets were worthless in 1985 and supports that argument solely by petitioner's determination in 1987 of the amount of such worthless assets in 1985. Petitioner states: Petitioners do not contend that the letters from the regulators are sufficient to establish a conclusive presumption of worthlessness under Treasury Regulations section 1.166-2(d), since the evidence of record demonstrates that the loans were not claimed as deductions at the time of filing the return for 1985, as required by the regulation. Nevertheless, the fact that the regulation relies so heavily on regulatory determinations in resolving the inherently factual issue of worthlessness tends to confirm that the letters received in 1985 are evidence of worthlessness and constitute an "identifiable event" for purposes of Code Section 166. SeeSterling Production Credit Association v. United States, 61-1 U.S.T.C. par. 9292 (D.C., Colo. 1961) ("The recommendations made by the supervisory federal agency as to reserve for bad debts are entitled to great weight.") The letters *561 relied on by petitioner, however, do not establish that any assets, much less those written off by petitioner, were worthless. Petitioner asserts that "Section 23A of the Federal Reserve Act defines 'low quality' assets to include, among other things, assets that are 'substandard,' 'doubtful,' or 'loss.'" We cannot equate "low quality" with worthlessness, even if the assets had been identified. Petitioner's bald characterization of the assets as worthless is not sufficient to satisfy its burden of proof. Section 404(a)
Section 404(a) governs the deductibility of contributions to pension plans that are qualified for favorable tax treatment under sections 401(a) and 501(a). Among other things, this provision requires that the actuarial assumptions and funding method used in determining the amount deductible for such plans shall be the same as those used for the particular year under section 412. See sec. 1.404-14(d)(1), Income Tax Regs.Section 412 (which sets forth the minimum funding standards for pension plans), in turn, requires that the assumptions *562 and method used be reasonable in the aggregate (taking into account the experience of the plan and reasonable expectations). Sec. 412(c)(3). Section 412(c)(2) expressly contemplates that the assumptions and method will be selected and applied by a qualified actuary. Petitioner's deductions apparently include payments made to a defined benefit plan. Thus, actuarial expertise is essential in selecting the appropriate assumptions and funding method for the plan and applying them to derive the plan deduction for a particular year. The parties stipulated to checks for payments to petitioner's pension plan. There is no evidence, however, that the amounts claimed are properly deductible under section 404(a)(1). The only evidence offered by petitioner on this point was the testimony of the vice president and comptroller of West One Bancorp, who stated that the amount claimed ($ 973,000) was less than the correct deduction ($ 1,450,623) on the 1985 return. No explanation of how the alleged error occurred was provided. The witness also identified an actuarial report prepared by independent actuaries as of January 1, 1985, which petitioner offered in evidence. Respondent objected on *563 the ground that the report had not been provided 15 days before trial as required by Rule 143(f), Tax Court Rules of Practice and Procedure, and the Court's Standing Pre-Trial Order. Moreover, the person who prepared the report was not present and had not been identified as a witness. Respondent's objection to the report was sustained. Petitioner acknowledges that pension plan deductions are subject to certain dollar limitations contained in sections 404 and 412. Petitioners argue that "All of the information necessary to calculate these limits is contained in Schedule B of Moore Financial's 1985 Form 5500 * * *, which was offered and accepted into evidence without objection as part of Exhibit 44." Again petitioners ask us to accept representations on their returns at face value, without any admissible evidence that those amounts are correct. Petitioners have failed to satisfy their burden of proof. As set forth in our prior opinion, Decisions will be entered under Rule 155.